UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Stephen John Wiczek and<br>Donna Lorraine Wiczek,<br><br>Debtors. | Bky. No. 10-51280<br>Chapter 7 Case |
| Terri A. Running, Trustee.<br><br>Plaintiff,<br><br>vs.<br><br>Nisswa Marine, Inc,<br><br>Defendant. | Adv. No: 11-5009<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## I.

### INTRODUCTION

Defendant Nisswa Marine, Inc. ("Nisswa") submits this response to the Trustee's Motion for Summary Judgment [Dkt. No. 8]. The Trustee essentially makes one argument, to wit: that on transfer of funds to their own corporation, the Debtors did not receive reasonably equivalent value.[1] The Trustee's motion should be denied as a matter of law because (1) under longstanding law and logic, a transfer to capitalize one's own corporation is deemed a transfer for reasonably equivalent value and (2) payment of one asset such as cash into another such as stock owned by the same parties is a transfer for equal value and can never be a constructive fraud. Alternately, if the court believes the question of reasonably equivalent value is unclear, it

---

[1] The Trustee's motion seeks judgment for constructive fraudulent transfer <u>only</u>, under 11 U.S.C § 548(a). She is not arguing in this motion, any issues of improper intent or actual intent to hinder, delay or defraud.

presents a question of fact that cannot be resolved on the limited record currently before the court.

## II.

## FACTS

Nisswa Marine, Inc. is a Minnesota corporation operating with current management since 1998. In 2005, Debtors Stephen and Donna Wiczek bought out the other shareholders, and are now the sole shareholders. (Wiczek Declr. at ¶ 5).

Nisswa Marine filed a petition for Chapter 11 bankruptcy on June 8, 2009. It confirmed a plan of organization on August 19. 2010. (Wiczek Declr. at ¶ 6–7).

Virtually the only income that Nisswa receives during the winter is from storage fees for storing customer's boats and watercraft. This income is minimal, representing only 8% of its yearly revenues. (Wiczek Declr. at ¶ 8). Because the other 92% of Nisswa's income is received in the summer, it is necessary for Nisswa to have significant amounts of cash on hand in order to survive the winter months. (Wiczek Declr. at ¶ 9).

Prior to filing bankruptcy, the Debtors consulted their bankruptcy attorney for advice on whether it would be acceptable to transfer money into Nisswa's accounts in order to pay current bills and keep it in operation through the winter. (Wiczek Declr. at ¶ 10–11). The Debtor's bankruptcy counsel agreed that such a transfer would be permissible. (Wiczek Declr. at ¶¶ 11, 14). Prior to their bankruptcy filing, the Debtors transferred approximately $41,000 into Nisswa's bank account. (Wiczek Declr. at ¶ 12). The purpose of these transfers was not to conceal them from creditors, but to (i) capitalize the company, (ii) allow the business to pay its creditors, (iii) ensure that the debtors could maintain the income stream from the business that provided part of their livelihood, (iv) maintain the jobs for company employees and staff, (v) increase the value of the debtors' shares in the company dollar for dollar with the capital

contribution, and (vi) pay corporate creditors, many of whom had personal guarantees from the debtors. (Wiczek Declr. at ¶ 13).

## III.

## SUMMARY JUDGMENT STANDARD
## AND ELEMENTS OF CLAIM

A. **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure governs the granting of summary judgment motions and is made applicable to this adversary by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment is appropriate if and only if, "assuming all reasonable inferences favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane)*, 124 F.3d 978, 981–82 (8th Cir. 1997), *cert. denied*, 522 U.S. 1112, (1998) (citations omitted). The court views the record in light most favorable to the nonmoving party and affords that party all reasonable inferences in their favor. *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008). Here, examining the record in a light most favorable to the defendant as the non-moving party, the Trustee fails to demonstrate that no genuine issue of material facts exists in this case. Rather, at least two material issues of fact exist: whether the transfer to Nisswa was a "transfer" for the purposes of Section 548 of the Bankruptcy Code and whether the Debtors received reasonably equivalent value for any such transfer. Because genuine issues of material fact exist for trial, the Trustee's motion for summary judgment must be denied.

B. **ELEMENTS OF CLAIM**

The Trustee bases her motion on 11 U.S.C. § 548(a)(1).[2] For the Court to find that a fraudulent transfer occurred, the trustee must prove the following: (1) there was a transfer of an interest of the debtor in property; (2) the transfer was made within the two years prior to the petition date; (3) the debtor was insolvent on the date the transfer was made; and (4) the debtor received less than a reasonable equivalent value in exchange for the transfer. *First Nat'l Bank in Anoka v. Minnesota Utility Contracting, Inc. (In re Minnesota Utility Contracting, Inc.)*, 110 B.R. 414, 417 (D.Minn. 1990). Because there are no issues concerning the Debtors' state of mind, the only real issue is whether the Debtors got reasonably equivalent value. As can be seen below, reasonably equivalent value was received as a matter of law and simple logic.

## IV.

## LEGAL ANALYSIS

A. **THE TRANSFER WAS FOR REASONABLY EQUIVALENT VALUE**

The Trustee alleges that the transfer of the approximately $41,000 by the debtors to Nisswa was constructively fraudulent under Section 523(a)(1)(B) of the Bankruptcy Code. But

---

[2] Section 548(a) of the Bankruptcy Code states in pertinent part:

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> > (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

4.

the Trustee's case ultimately fails because the transfers at issue were transfers for reasonably equivalent value. The debtors merely transferred an asset in one form (cash), to a corresponding asset in another form (share value). Because the debtors received share value that is equivalent to their transfer, the Trustee's motion for summary judgment fails as a matter of law and should be denied. This has been the longstanding law, and is unassailable.

A case that exemplifies this principle of law is *Jordan v. Lynch Land Co.*, 147 N.E. 318 (Ind. App. 1925). There, the defendant was indebted to several people, and judgments had even been obtained. The defendant then formulated a plan to transfer certain real estate into a corporation, for which the defendant would receive stock. Creditors of the defendant objected and sued for fraudulent transfer. The court in the *Jordan* case rejected the argument that a constructive fraudulent transfer occurred. The court stated in pertinent part:

> Substantially, all of the stock of the corporation was issued to the [Defendant] in payment for the land transferred to the corporation. . . .
>
> . . .[the] issuance of stock in a corporation for property transferred to it <u>is good and valuable consideration therefor</u> (citing numerous cases) (emphasis added)

The *Jordan* court went on to state that the payment of corporate creditors with the land asset could also never be a fraud. It can only be held improper and undue by the court if there were an improper purpose, motive or intent.

> . . .A debtor has, as here the right to prefer one creditor to others, he also has the right to organize a corporation, transfer his property thereto for stock….so long as such transfers are not with intent to defraud. . . . (citing numerous cases).

In the instant case, there can be no question that the value of the debtors' company was increased by the value of the capital contribution. In fact, if the contribution were not made, the company may have gone out of business, thus losing not only the share value, but also the debtors' livelihood (along with the jobs for employees, etc.). We agree that if done with

5.

improper motive, for the purpose of hindering, delaying and defrauding creditors, the transaction can be attacked. Here, as stated above, the Trustee is not pursuing these arguments in this motion. Nor could she. Such arguments relating to intent are clearly questions of fact, which should not be determined by summary judgment.

In a similar case, *Maskell v. Spokane Cycle*, 170 P. 350 (Wash. 1918), a creditor again attempted to attack the transfer of assets by a debtor to his corporation. The court rejected the plaintiff's argument, stating:

> There is nothing illegal or improper in the formation of [a company], nor in the transfer to it by [defendant] of the property in question.

Of course, the court agreed that, if done with the intent to defraud, that could raise another issue. But constructive fraud does not arise from the mere capitalization of a corporation.

### B. THE TRANSFER WAS BALANCE-SHEET NEUTRAL

Here, the debtors transferred cash from one bank account into Nisswa's account, when they are the only two shareholders, the debtors. Under long-held law concerning capitalizations of corporations, the mere fact that a debtor transferred money into a corporation is not enough to sustain a claim of a fraudulent transfer. A Minnesota case provides analogous facts. *Thorpe v. Pennock Mercantile Co.*, 99 Minn. 22, 108 N.W. 940 (1906). In *Thorpe*, members of a partnership used partnership assets to form a corporation in return for corporate stock. The partnership creditors claimed that the transfer was fraudulent and was an attempt to shield partnership assets from creditors. The Minnesota Supreme Court disagreed, stating that:

> [T]he evidence fails to show intent to defraud the partnership creditors either in the formation of the corporation or in the transfer to it of partnership assets. It is very apparent the object of all those interested was to get new capital into the business, reorganize, and continue the business without any purpose or design of defrauding creditors. . . .

*Id.* at 25, 108 N.W. at 941.  The Minnesota Supreme Court held that under state law analogous to Section 548, "stock was a valuable consideration for property transferred to [to the corporation] and such transfer was not therefore per se fraudulent as against existing creditors" *Id* at 32, 108 N.W. at 944; *see also Sunderlin v. Terry*, 95 Conn. 713, 112 A. 642 (1921); *Byrne & Hammer Dry Goods Co. v. Willis-Dunn Co.*, 23 S.D. 221, 121 N.W. 620 (1909).  This is consistent with the long-held fraudulent transfer law of other states.  *See, e.g.*, *Lynch Land Co.*, 147 N.E. at 320 (stating as a rule that "the issuance of stock in a corporation for property transferred to it is a good and valuable consideration therefor.").

These cases establish the underlying principle that where a debtor transfers money into a wholly-owned corporation, the transaction is balance-sheet neutral—the debtor is taking a cash asset and placing it in share value.  Because the transaction was balance-sheet neutral, the corporation provides the debtor with reasonably equivalent value in the form of a dollar-for-dollar higher share value.  This is what the debtors did here: they took money and used it to capitalize their wholly-owned corporation.  The Trustee wants to argue that this transaction was <u>constructively</u> fraudulent because the debtors could not have received reasonably equivalent value.  But the Trustee turns decades of settled law on its head—a capital contribution to a wholly-owned corporation increases the value of the owner's shares on a dollar-for-dollar basis, which is reasonably equivalent value for that capital contribution.  This conclusion is compelled by both longstanding law and logic.

The Trustee worries that if this Court allows this transaction to stand, that every debtor will simply put funds in their corporations before filing.  The Trustee's concern is unfounded, and woefully mistaken.  The logical consequences of the Trustee's position is that whenever a debtor attempts to <u>save</u> their business by putting funds into it , and later is forced to file for bankruptcy, that business will always be subject to summary judgment on a constructive

7.

fraudulent transfer claim. But that scenario is common in bankruptcy—many debtors end up filing for bankruptcy relief because they tried to save their business. The reason why this does not result in a flood of fraudulent transfer litigation is because those transfers are deemed to provide reasonably equivalent value, and thus may not be attacked as constructively fraudulent. If, however, such transfer was done with improper purpose, the Trustee's claim would stand. Here, in this motion, the Trustee is not making a claim under § 547(b). The Trustee's constructive claim must fail.

C. **THE TRANSFER WAS FOR THE PURPOSE OF PAYING CREDITORS**

Further, the transfer to Nisswa was in order to help pay the corporation's debts, some of which were subject to the debtors' personal guarantees. Thus, in reality, one group of creditors is being, to some extent, preferred. But preferring one group of creditors over another can never be a fraudulent transfer. The debtors received reasonably equivalent value because the money that was transferred was used to pay off antecedent debts owed to Nisswa's creditors. It is axiomatic that the payment of a preference cannot be a fraudulent transfer because the transferor receives reasonably equivalent value in the form of a reduction of debt. *See, e.g. Sharp Int'l Corp. v. State Street Bank and Trust Co.*, 403 F.3d 43 (2d Cir. 2005) (noting that preference actions and fraudulent transfer actions have different purposes and that a preference cannot by definition be a fraudulent transfer because a preference reduces antecedent debt). While trustees in bankruptcy frequently blur the lines between the two avoidance actions, the elements of a claim under Section 547 and Section 548 are different. Here, because the Debtors were using the money to help pay off corporate debt, they received reasonably equivalent value, and therefore the transfer cannot be avoided as <u>constructively</u> fraudulent.

D.  **THE TRANSFER IS SIMILAR TO CASES WHERE A DEBTOR HAS TRANSFERRED NON-EXEMPT ASSETS INTO EXEMPT ASSETS**

The transfer involved here is analogous to transferring money from a non-exempt asset into an exempt one. When a debtor transfers a non-exempt asset such as cash into an exempt asset (such as by paying off a mortgage), the cash asset is beyond the reach of creditors. Here, the Debtors transferred cash assets into their wholly-owned corporation, where the Trustee states that it was not available to creditors. But it need not be available. Case law establishes that a debtor may legitimately transfer non-exempt assets into exempt assets. *See, e.g., In re Lindberg*, 735 F.2d 1087, 1090 (8th Cir.), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 566 (1984) (noting that a debtor may transfer non-exempt assets into exempt ones on the eve of bankruptcy provided there is no fraudulent intent). For example, the Eighth Circuit generally allows for liberal pre-bankruptcy planning, including a debtor using non-exempt funds to pay down a mortgage, so long as there is no actual fraudulent intent. *See, e.g., In re Addison*, 540 F.3d 805 (8th Cir. 2008). Such a transfer, however, can never be a constructive fraudulent transfer. Only a claim under § 547(b) can be made.

The *Addison* case presents a factual situation similar to that here: in that case, the debtor and his wife were liable under personally guaranteed business debts. The debtors in *Addison* made transfers in the approximate amount of $20,000 to pay down their mortgage and create IRAs. The payment on the mortgage was paid on the day of the bankruptcy filing. *Id.* at 807. The 8th Circuit examined the issue of whether the transaction was fraudulent under Section 522(o) of the Bankruptcy Code. The Court noted, however, that similar language and the intent of that section applies with equal force to Section 548 of the Code. *Id.* at 811. The Eighth Circuit noted that "[i]t is well settled that the mere conversion of non-exempt assets to exempt assets is not in itself fraudulent." *Id.* at 813 (quotation and citation omitted). While *In re Addison* dealt with the question of actual fraud under Section 522(o), its logic has a wide-ranging

application. The mere fact that a debtor transfers an asset, such as cash, and uses it to capitalize a wholly-owned company or pay off his own mortgage or antecedent debts does not allow the Trustee to avoid that transfer as fraudulent, as a constructive fraud. There could be an argument that it is actual fraud, but as stated, the Trustee is not alleging that in this motion. Here, the debtors did what the debtor in *In re Addison* did—use cash to capitalize their own company, that provided them with value. *Addison* does state that if there was actual fraud, the transfer may be avoidable, but the Trustee's motion does not concern actual fraud, and that issue is not relevant here.

### E. ALTERNATELY, THE QUESTION OF REASONABLY EQUIVALENT VALUE PRESENTS A GENUINE ISSUE OF MATERIAL FACT

Even if the court has doubts about whether the debtors received reasonably equivalent value for their transfers, those doubts leave the court with an issue of fact that is not resolved by the Trustee's motion papers. The crux of the Trustee's argument is that summary judgment should be granted because no reasonably equivalent value was given for the transfers to Nisswa. The question of reasonably equivalent value (where it is not clear on its face) is a question of fact that precludes summary judgment. It is a well-established principle that the question of whether a transfer is made for reasonably equivalent value is one of fact to be determined in light of the facts presented in each particular case. *Jacoway v. Anderson (In re Ozark Restaurant Equipment Co., Inc.)*, 850 F.2d 342, 344 (8th Cir. 1988). The sole argument presented by the Trustee is that the Debtors allegedly turned $41,000 in nonexempt funds into an asset with no value to the estate. But the Debtors did receive substantial value from the transfer. For one, the very life of the company was saved, preserving their livelihood. Creditors were paid that that preserved jobs, and the going concern value of the company was preserved. Whatever the company's value, it is infinitely higher as a going concern, than if shut down and closed.

The Trustee bears the burden of showing that there are no genuine issues of material fact that would show that the Debtors received reasonably equivalent value. The Trustee is not entitled to summary judgment because there are genuine issues of material fact that preclude summary judgment. The infusion of capital was necessary to preserve Nisswa's business, and the stream of income it gave to the Debtors. In other words, it preserved the debtors' livelihoods. While Nisswa maintains that the debtors received reasonably equivalent value for their transfer, even if there is some doubt on that point, the Trustee's formulaic recitation of facts does not demonstrate that there are no genuine issue of material facts that allow the Trustee to be entitled to judgment as a matter of law. *See Tudor Oaks Ltd. P'ship*, 124 F.3d at 981–82 (reciting summary judgment standard). The Trustee has simply not met the burden of demonstrating that there was no reasonably equivalent value created, and therefore is not entitled to summary judgment.

## CONCLUSION

The court should deny the Trustee's motion for summary judgment because the debtors received reasonably equivalent value for their transfers. Even if there is some doubt about what value the debtors received, that creates an issue of fact that precludes granting summary judgment in favor of the Trustee. Accordingly, the Trustee's motion should be denied.


Dated: September 22, 2011      /e/ Thomas J. Flynn
                               Thomas J. Flynn (30570)
                               Richard J. Reding (389945)
                               Larkin Hoffman Daly & Lindgren Ltd.
                               1500 Wells Fargo Plaza
                               7900 Xerxes Avenue South
                               Minneapolis, Minnesota  55431-1194
                               (952) 835-3800

                               Attorneys for Defendant, Nisswa Marine, Inc.

1371826.4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Stephen John Wiczek and
Donna Lorraine Wiczek,

               Debtors.

Bky. No. 51280
Chapter 7 Case

Terri A. Running, Trustee.

               Plaintiff,

vs.

Nisswa Marine, Inc,

               Defendant.

Adv. No: 11-5009

**DECLARATION OF STEPHEN WICZEK IN OPPOSITION TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

1. I am the President of Nisswa Marine, Inc., the Defendant in this adversary proceeding.

2. I am also one of the Debtors in the underlying bankruptcy case.

3. I make this declaration based on my own first-hand knowledge.

4. Nisswa Marine, Inc. is a Minnesota corporation that engages in the sale, repair, and storage of boats and other watercraft.

5. My wife and I are the sole shareholders of Nisswa Marine.

6. Nisswa Marine filed for Chapter 11 bankruptcy on June 8, 2009.

7. Nisswa Marine confirmed its Plan of Reorganization in August 19, 2010.

8. Because Nisswa Marine is a seasonal business, most of its income is generated during the summer months. During the winter, most of its income comes from storage fees for boats and watercraft. Historically, storage fees make up only 8% of Nisswa Marine's income.

9. While Nisswa Marine had some cash reserves in early September 2010, the summer season was largely over. In order to pay payroll, expenses, and payments, Nisswa Marine needed an additional capital contribution for immediate short-term needs and to help preserve the company over the winter.

10. Shortly before my bankruptcy I sought the advice of counsel on whether I could transfer money to Nisswa Marine in order to keep it operational.

11. I was advised by my personal bankruptcy counsel that I could make a transfer and capitalize Nisswa Marine without the company or my wife and I incurring any liability to a trustee in bankruptcy.

12. Accordingly, I transferred approximately $32,000 to Nisswa Marine, and my wife transferred approximately $9,000.

13. The purpose of these transfers was never to hinder, delay, or defraud any creditors. In fact, the purpose of the transfers was: (i) to capitalize the company in order to pay creditors of the business; (ii) to ensure that Nisswa Marine would be able to survive the winter months and preserve jobs of Nisswa Marine employees; (iii) to ensure that my wife and I would save our livelihood; (iv) to enable my wife and me to increase, dollar for dollar, the value of our shares in Nisswa Marine; and (iv) to further reduce my wife's and my exposure to creditors of the company whose debts were guaranteed by us.

14. My personal bankruptcy counsel was aware of these transfers and informed me they were appropriate for the purpose stated.

*Steven Wiczek*

1372068.1

2.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Stephen John Wiczek and<br>Donna Lorraine Wiczek,<br><br>      Debtors. | Bky. No. 10-51280<br>Chapter 7 Case |
| Terri A. Running, Trustee.<br><br>      Plaintiff,<br><br>vs.<br><br>Nisswa Marine, Inc,<br><br>      Defendant. | Adv. No: 11-5009<br><br>**CERTIFICATE OF SERVICE** |

  I, Thomas J. Flynn, under penalty of perjury, hereby declare that on September 22, 2011, in connection with the above-referenced adversary proceedings, the following documents:

1. Defendant's Response to Plaintiff's Motion for Summary Judgment;
2. Declaration of Stephen Wiczek in Opposition to Trustee's Motion for Summary Judgment; and
3. Certificate of Service

were filed with the Clerk of Court via **ECF**, and **ECF** will send a notice of electronic filing to the parties entitled to service under Local Rule 9013-3(b) as follows:

- Matthew R. Burton mburton@losgs.com, swood@losgs.com

Dated: September 22, 2011        */e/ Thomas J. Flynn*
                         Thomas J. Flynn